UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
CASE NO: 08-80017-CIV-Marra/Johnson

SIERRA EQUITY GROUP, INC., as
assignee of Michael Splain, James W.
Lees, and the Andrew Revocable Trust,

        Plaintiff,

v.

WHITE OAK EQUITY PARTNERS,
LLC, ROSS STATHAM, PHILIP
ORLANDO and ANTHONY
ORLANDO,

        Defendants.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS PHILIP AND ANTHONY ORLANDO

Plaintiff Sierra Equity Group, Inc. ("Sierra"), by and through its undersigned counsel, submits this memorandum of law in opposition to the Motion To Dismiss of Defendants Philip and Anthony Orlando (the "Orlandos"). [DE-36].

### PRELIMINARY STATEMENT

In this action, Sierra, as assignee of three investors ("Investors"), seeks to recover damages in connection with a fraudulent securities transaction. To induce the Investors to enter into agreements to purchase securities, the Orlandos and the other defendants fraudulently misrepresented the use of the proceeds to be obtained from the Investors and failed to inform the Investors that the Orlandos would receive an undisclosed illegal commission exceeding 25% of the total investment funds. In these ways, Sierra has stated claims for fraud, securities fraud and unjust enrichment against the Orlandos.

The Orlandos argue that Sierra has failed to state claims against them because: (1) scheme liability does not exist under the federal securities laws and the Orlandos did not personally participate in the fraud, (2) merger clauses in the relevant transaction documents foreclose the justifiable reliance element on all of Sierra's fraud claims, and (3) Sierra has not pled how the Orlandos knew that they would receive an undisclosed illegal commission in connection with the transaction. As shown below, Sierra has surpassed all of the legal hurdles necessary to state claims for fraud and securities fraud.

The Orlandos also assert that the Complaint should be dismissed because they are not subject to personal jurisdiction in Florida. This assertion is baseless because the Orlandos admitted in answers to interrogatories that they participated in at least eighteen business deals in Florida during the relevant time period and, furthermore, they committed at least one tortious act in Florida sufficient to subject the Orlandos to personal jurisdiction under Florida's long arm statute.

## FACTS

**A.      Substantive Allegations.**

In early 2006, the Orlandos contacted Ross Statham ("Statham") in Georgia to discuss a securities transaction in which a private company would be reverse merged into the shell of a public company. Complaint at ¶ 12. The Orlandos asked Statham whether he had a "clean" entity which they could use to accomplish this transaction and ultimately sell this investment to qualified investors. Id. Statham offered the Orlandos White Oak Equity Partners, LLC ("White Oak") as the entity to accomplish this transaction and the Orlandos consented. Id.

Specifically, the transaction involved the reverse merger of Volptech International, Inc. ("Volptech") into a public shell company, Gem Systems, Inc. ("Gem"). Complaint at ¶ 13. The

Orlandos were integral in structuring and negotiating the transaction. Id. White Oak and Statham agreed to pay the Orlandos a substantial commission contingent upon the completion of the securities transaction. Complaint at ¶ 14.

Soon thereafter, Statham, Philip Orlando and Anthony Orlando, all purportedly on behalf of White Oak, contacted Sierra in Florida, via telephone, and advised Sierra that White Oak intended to offer securities to certain qualified investors. Complaint at ¶ 15. During this telephone conversation, Philip Orlando and Anthony Orlando both stated to Alan Goddard of Sierra that White Oak intended to acquire shares of restricted common stock of Gem and Volptech with the proceeds of the Offering. Id. The shares of restricted common stock of Gem are hereinafter referred to as "Gem Common Stock." The shares of restricted common stock of Volptech are hereinafter referred to as "Volptech Common Stock."

During the telephone call, White Oak and Statham failed to advise Sierra that the Orlandos would receive a commission or otherwise profit from the Offering. Complaint at ¶ 16. The Orlandos are not licensed as a broker or dealer under relevant federal and state laws, nor are they associated with a licensed broker or dealer. Complaint at ¶ 17. The Defendants intended that Sierra would pass on the representations and omissions made during this telephone conversation to potential investors and the Defendants intended for those potential investors to rely upon these representations and omissions. Complaint at ¶ 18.

On or about August 23, 2006 and in reliance on the Orlandos' statements to Sierra described above, Sierra entered into a Selling Agreement ("Selling Agreement") with White Oak wherein White Oak proposed to offer and sell, through Sierra, an "Offering" (as that term was defined in the Selling Agreement) "to selected investors, upon terms set forth herein and in the Subscription Agreement… up to $232,000, such Offering to be in the form of a loan convertible

into common stock as set forth in the Note." Complaint at ¶ 19. The Selling Agreement is attached as Exhibit A to the Complaint. In the Selling Agreement, White Oak (through Statham) represented and covenanted that it would use the proceeds from the Offering (i.e. funds received from investors) to acquire Gem Common Stock and Volptech Common Stock. Indeed, White Oak (through Statham) promised that, in addition to paying Sierra a cash commission for its services in connection with the Offering, it would also provide to Sierra: "(i) 17,500,000 shares of restricted common stock of GEM and (ii) 1,575,000 shares of restricted common stock of Volptech which represented a portion of the shares of common stock being purchased by [White Oak] with the proceeds of the Offering." See Complaint at ¶ 20; Selling Agreement at § 1.5.

The Selling Agreement did not disclose that the Orlandos would receive compensation in connection with the Offering. See Complaint at ¶ 21. White Oak intended that Sierra would convey the representations and omissions contained in the Selling Agreement to potential investors and White Oak intended for those potential investors to rely upon these representations. See Complaint at ¶ 21. The Selling Agreement provides for exclusive jurisdiction and venue in Palm Beach County, Florida. Selling Agreement at § 9.10. Moreover, any dispute that arises thereunder shall be governed by the laws of the state of Florida. Id.

Pursuant to the Selling Agreement, Sierra presented White Oak's Offering to potential investors and conveyed White Oak's and Statham's representations to them. See Complaint at ¶¶ 23-24. In August 2006, relying on the Orlandos' oral representations and White Oak's written representations and covenants in the Selling Agreement, three investors, Michael E. Splain, James W. Lees, and the Andrew Revocable Trust (collectively "the Investors"), executed Subscription Agreements ("Subscription Agreements") and tendered their investment funds to

White Oak. See Complaint at ¶ 25. A copy of one of the Subscription Agreements is attached to the Complaint as Exhibit "B." Together with the executed Subscription Agreements, each Investor provided White Oak with a Convertible Note, a copy of which is attached to the Complaint as Exhibit "C." See Complaint at ¶ 25. The Subscription Agreement and the Convertible Note are hereinafter collectively referred to as the "Subscription Documents."

When the Investors provided White Oak with their signed Subscription Documents, they instructed White Oak that their investment funds were for use only in connection with the Offering. See Complaint at ¶ 26. In total, the Investors invested $233,000 with White Oak. See Complaint at ¶¶ 27-29. The Subscription Documents indicated that the proceeds from the Offering would be used to purchase GEM Common Stock and Volptech Common Stock. See Complaint at ¶¶ 30-33. The Subscription Documents did not disclose to the Investors that the Orlandos would receive any proceeds from the Offering or otherwise receive a commission or compensation in connection with the Offering. See Complaint at ¶ 34. The Subscription Documents, which form the basis for the Investors' claims against White Oak and Statham, contain Florida choice of forum and choice of law clauses. See Complaint at Exhibit B § 9(d) and Exhibit C § 4.6.

Although White Oak refused to execute the Subscription Agreements, White Oak accepted the Subscription Agreements by retaining the Investors' funds. See Complaint at ¶ 37. Indeed, section 4.1 of the Selling Agreement states that for all rejected subscriptions, White Oak must return all investment funds to the prospective purchaser. See Complaint at ¶ 36. White Oak never returned the Investors' funds.

Moreover, contrary to the Orlandos' oral representations, and the written representations found in the Selling Agreement and Subscription Documents, White Oak provided at least

$60,000 of the funds tendered by the Investors to the Orlandos as compensation contingent upon the Offering being successful. See Complaint at ¶ 39. Thus, the Orlandos received a commission in excess of 25% of the total amount of funds provided by the Investors.

In addition, White Oak defaulted on the Subscription Documents by failing to acquire Volptech Common Stock and by failing to distribute Gem Common Stock. See Complaint at ¶¶ 40-43. Despite the Investors' demands, White Oak refused to return the investment funds to the Investors. See Complaint at ¶¶ 44-46.

In order to salvage its relationship with the Investors, Sierra reimbursed the Investors for the funds they invested with White Oak. See Complaint at ¶ 47. In exchange, the Investors assigned ("Assignments") their right, title and interest in the Offering, the Subscription Agreement and in White Oak to Sierra. See Complaint at ¶ 48; Composite Exhibit I to the Complaint.

In that regard, Sierra, on behalf of the Investors, commenced this action and alleges claims against the Orlandos for fraudulent inducement (Count III) and securities fraud under both state and federal law (Counts V and VI).

**B.      Jurisdictional Facts.**

In connection with the purported Offering, the Orlandos extensively communicated with Sierra in Florida. The Orlandos produced telephone records which demonstrate over 200 calls to Sierra in Florida.[1] See telephone records indicating calls between the Orlandos and Sierra attached hereto as Exhibit "A," see also Affidavit of Alan Goddard [DE-46] at ¶ 6. The Orlandos also engaged in a great amount of email correspondence with Sierra in connection with the supposed Offering. See email communications among Statham and Sierra attached hereto as

---

[1] Sierra's telephone number is (561) 997-0047. Goddard Aff. [DE-46] at ¶ 4. Alan Goodard, a principal of Sierra, has cellular phone number (561) 445-7396. Id.

Exhibit "B"; Goddard Aff. [DE-46] at ¶ 8. The Orlandos also took at least four trips to Florida to discuss the Offering with Sierra.  See Orlandos Answers to Interrogatories [DE-41,42] at # 2; Goddard Aff. [DE-46] at ¶ 9; travel records of the Orlandos' trips to Florida are attached as Exhibit "C."  In his deposition, the Philip Orlando could not deny that these meetings concerned the purported Offering.  See Deposition Transcript of P. Orlando [DE-45] at pp. 91:5-97:11. During at least one of these trips, the Orlandos met with executives from Volptech in Florida. See Deposition Transcript of A. Orlando [DE-43] at pp. 60:18-64:14;  Deposition Transcript of P. Orlando [DE-45] at pp. 92:21-94:4.

       Moreover, during 2006 to the present, the Orlandos identified 18 other transactions in which they have been involved with Florida based persons. See Orlandos Answers to Interrogatories [DE-41, 42] at # 3 and Schedule A to DE-42; e-mails regarding these other business deals are attached hereto as Exhibit "D."  During their four trips to Florida, the Orlandos followed a rigorous agenda to meet with many of the individuals involved in these business deals. See e.g., Exhibit B at bates numbers ORL00000005; Goddard Aff. [DE-46] at ¶ 9.  The Orlandos' telephone records indicate many telephone calls to businesses in Florida that were associated with these 18 business transactions. See Exhibit A. The Orlandos' described the nature of these business transactions in their depositions. See Deposition Transcript of A. Orlando [DE-43] at pp. 41:25-100:14;  Deposition Transcript of P. Orlando [DE-45] at pp. 53:22-88:2. Prior to being banned from the securities business by the NASD, both Orlandos were registered under the blue sky laws of Florida. See Orlandos' Answers to Interrogatories [DE-41, 42] at # 4.

## ARGUMENT

**I.     The Orlandos Are Subject To Personal Jurisdiction In Florida.**

    **A.     Standard Of Review.**

In determining whether personal jurisdiction exists over a nonresident defendant, a court must determine whether the exercise of personal jurisdiction would comport with both the state's long-arm statute and the Due Process Clause of the United States Constitution.  See Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 856 (11th Cir. 1990). Accordingly, there is a two-part test for personal jurisdiction:  (1) the complaint must allege sufficient facts to bring the action within one of the provisions of section 48.193 of the Florida Statutes, and (2) there also must be sufficient "minimum contacts" between the nonresident and Florida to satisfy due process requirements.  See id.; Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005).  Accord Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989) (cautioning that the mere proof of any one of the several circumstances enumerated in section 48.193 does not automatically satisfy the due process requirement of minimum contacts but also recognizing "that implicit within several of the enumerated circumstances are sufficient facts which if proven, without more, would suffice to meet the requirements") (citation omitted).

    **B.     Procedure.**

With regard to the procedure employed by courts when confronted with a motion to dismiss for lack of personal jurisdiction:

> Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis of service in the language of the statute without pleading the supporting facts.  The complaint must contain a statement of the ultimate facts showing the existence of jurisdiction but it need not contain a statement of the evidentiary facts.  The defendant may assert the lack of personal jurisdiction as a defense in the responsive

> pleading or in a motion to dismiss. However, a motion to dismiss challenges only the sufficiency of the jurisdictional allegations in the complaint and not the truth of those allegations. The defendant may challenge the underlying facts by submitting an affidavit showing that there is no basis for the exercise of personal jurisdiction  If the defendant submits an affidavit *contesting the jurisdictional facts*, the burden then shifts to the plaintiff to prove by affidavits or other sworn statements the facts supporting the existence of jurisdiction. [The plaintiff then has the burden of establishing a prima facie case of personal jurisdiction, which is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.] If the issue cannot be determined on the basis of the affidavits --if the trial court cannot reconcile the two sets of affidavits --, then the trial judge must conduct a limited evidentiary hearing in order to determine the jurisdiction issue.  At the hearing, the parties must present evidence on the issue of personal jurisdiction.  The judge must then make findings of fact supporting the existence or nonexistence of jurisdiction.

Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502-503 (Fla. 1989); Cable/Home Communication Corp. v. Network Productions, Inc.**,** 902 F.2d 829 (11th Cir. 1990).   The pleadings, affidavits, and all reasonable inferences must be construed in favor of the plaintiff. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006) ("Where [the] complaint and supporting affidavits and documents conflict with the Defendants' affidavits, we must construe all reasonable inferences in favor of the plaintiff.") (citation omitted).   In addition, "[t]he court's sole inquiry and determination [is] whether the tort *as alleged* occurred *in Florida,* and not whether the alleged tort *actually occurred."*  Walter Lorenz Surgical, Inc. v. Teague**,** 721 So.2d 358, 359 (Fla. 1st DCA 1998) (emphasis in original), rev'w denied, 731 So. 2d 650 (Fla. 1999).

C.      **The Orlandos Are Subject To Personal Jurisdiction In Florida.**

   1.    **There Exists General Jurisdiction Over The Orlandos.**

   The Orlandos are subject to general jurisdiction in Florida.

   A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). In order to establish that the Orlandos was engaged in substantial and not isolated activity in Florida, the activities of the Orlandos must be " 'considered collectively and show a general course of business activity in the State for pecuniary benefit.'" Stubbs v. Wyndham Nassau Resort And Crystal Palace Casino, 447 F. 3d 1357, 1361 (11th Cir. 2006) (citations omitted).  The Orlandos have produced evidence that they took four trips to Florida in which they tended to the Offering and eighteen other business deals. During the relevant time period, the Orlandos also made hundreds of calls to Florida and engaged in extensive email correspondence in connection with these business deals.  In their depositions, Statham and the Orlandos all confirmed that the Orlandos were compensated in connection with the Offering. See Statham Deposition Transcript [DE-44] at pp. 36:12-37:12; P. Orlando Deposition Transcript  [DE-45] at pp. 31:8-32:19.; A. Orlando Deposition Transcript [DE-43] at pp. 31:12-31:32. Because of this continuous and systematic business activity in Florida, the Orlandos are subject to general jurisdiction here.

   **2.    There Exists Specific Jurisdiction Over The Orlandos.**

Under Florida's long-arm statute, a nonresident defendant is subject to the jurisdiction of Florida courts for "a cause of action arising from a tortious act committed by the defendant in the state."  Fla. Stat. 48.193(1)(b). Case law makes clear that the nonresident defendant need not be physically present in the state to satisfy this part of the test. "[A]llegations about an out-of-state defendant's 'telephonic, electronic, or written communications into Florida' are sufficient to trigger jurisdiction under the Long-Arm statute provided, however, that the cause of action arises from those communications." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168-1169 (11th Cir. 2005) (determining allegations that defendant in communications from his California office to plaintiff in Florida made misrepresentations with

intent to deceive and defraud plaintiff were sufficient to establish jurisdiction under section 48.193(1)(b)); Acquadro v. Bergeron, 851 So.2d 665 (Fla. 2003) (holding, inter alia, allegations sufficient to support jurisdiction where out-of-state nonresident defendant allegedly defamed Florida resident during one phone call made into Florida); Wendt v. Horowitz, 822 So.2d 1252 (Fla. 2002) (holding that making telephonic, electronic, or written communications into Florida from out-of-state may constitute "committing a tortious act" under Florida long-arm statute if the alleged cause of action arises from the communication); Machtinger v. Inertial Airline Service, Inc., 937 So.2d 730, 735 (Fla. 3d DCA 2006) (in suit that defendants conspired to defraud and steal from company, defendant's alleged fraudulent misrepresentations made in furtherance of the conspiracy from outside Florida by phone, fax, and in writing, directed to plaintiff's officers at its Florida headquarters constituted tortious acts committed within Florida for purpose for statute); Krilich v. Wolcott, 717 So.2d 582 (Fla. 4th DCA 1998) (jurisdiction over out-of-state nonresident defendant who made fraudulent statement in Florida); see also Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582 (Fla. 2000) (allegations that out-of-country manufacturer conspired to fix product price in United States, including Florida, sufficient to support jurisdiction under long-arm statute for committing tortious act), cert. denied, 531 U.S. 818, 121 S.Ct. 58, 148 L.Ed.2d 25 (2000).   Florida's long-arm statute is satisfied by a single communication into Florida by the defendant in which the plaintiff alleges the defendant committed a tortious act.  Acquadro v. Bergeron, 851 So.2d 665 (Fla. 2003) (allegations sufficient to support jurisdiction where nonresident defendant allegedly defamed Florida resident during one phone call made into Florida).

   Here, the Orlandos made a telephone call into Florida in which they made fraudulent misrepresentations and omissions to induce the Investors to invest funds with White Oak.

Complaint at ¶ 15.  In furtherance of their tortious activity, the Orlandos made hundreds of phone calls and extensively communicated by email with Sierra in Florida. They also made four business trips to Florida and met with executives from Volptech during at least one trip.

The Orlandos are subject to specific jurisdiction for the further reason that Sierra's claims arises from the Orlandos' "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state..." Fla. Stat. § 48.193(1)(a). As discussed above, all of Sierra's claims arise from the Orlandos' business activities in Florida.

### 3. The Orlandos Have Sufficient Minimum Contacts With Florida.[2]

The exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution when (1) the nonresident defendant has purposefully established minimum contacts with the forum and (2) the exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990).  To satisfy the minimum contacts requirement for purposes of personal jurisdiction, a defendant's contacts (1) must be related to the plaintiff's cause of action or have given rise to it, (2) must involve some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum, and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.  Id.; see also Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 858 (11th Cir. 1990) ("A significant single act or meeting in the forum state has been held sufficient for personal jurisdiction there.").

---

[2] If the Court finds that general jurisdiction exists over the Orlandos, it should necessarily find that personal jurisdiction over the Orlandos would comport with the Due Process Clause. Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D. Fla. 2003).

First, the Orlandos' contacts with Florida are clearly related to Sierra's causes of action. Second, the Orlandos have purposely availed themselves of the privilege of conducting activities in Florida by engaging in communications with Sierra in Florida.

Third, a defendant can reasonably anticipate being haled into a Florida court to answer for misrepresentations it made to a Florida resident to induce that resident to act. Machtinger v. Inertial Airline Service, Inc., 937 So.2d 730, 735-736 (Fla. 3d DCA 2006). Further, by virtue of a nonresident's call to an individual in Florida, the nonresident is deemed to know that any misrepresentations made during the call would impact that individual in Florida. OSI Industries, Inc. v. Carter, 834 So.2d 362, 367-368 (Fla. 5th DCA 2003). Additional contacts with Florida residents, such as by telephone, fax and mail militate in favor of a finding of minimum contacts. Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 718-719 (Fla. 4th DCA 1998). By directing their tortious conduct to Florida, the Orlandos could have reasonably anticipated being haled into court here.

The Orlandos argue that the exercise of personal jurisdiction over them would violate the minimum contacts doctrine. In support thereof, they cite Future Tech Today, Inc. v. OSF Healthcare Sys., 218 F. 3d 1247, 1251-52 (11th Cir. 2000) for the proposition that one phone call into Florida is insufficient for minimum contacts. Future Tech is inapposite because the Orlandos engaged in far more than one phone call to Florida. The Orlandos also urge the Court to rely upon Ahmed v. Quinn, 124 F. 3d 203, 1997 WL 471335, *3 (7th Cir. Aug. 13, 1997). In Ahmed, the plaintiff alleged various claims including defamation and racial discrimination against a potential Massachusetts employer. Id. The plaintiff in Ahmed alleged that the potential employer was located in Massachusetts, the tortious conduct occurred in Massachusetts, the employment interview took place in Massachusetts and that the employer did not solicit the

plaintiff's employment application. Id. Here, Sierra alleges that the tortious conduct occurred in Florida, the Orlandos purposefully communicated with persons in Florida about the Offering, the Orlandos visited Florida four times in connection with the Offering and the Orlandos participated in 18 other business deals in Florida during the relevant time period.  As a result exercise of jurisdiction over the Orlandos would comport with the Due Process Clause

### D. Sierra Has Stated Claims Against The Orlandos.

#### 1. Sierra Has Stated Claims For Fraud And Securities Fraud.

The Orlandos contend that Sierra has failed to state claims for fraud and securities fraud because: (1) the claims are impermissibly founded upon "scheme liability," (2) the economic loss rule bars such claims, (3) a merger clause bars fraud claims, and (4) fraud is not pled with particularity.  All of these contentions are without merit.

First, the Orlandos argue that Sierra has not made any direct allegations against them and that "scheme liability" for securities fraud has been foreclosed by Stoneridge Inv. Part., LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008).  Stoneridge is not applicable here because Sierra alleges direct liability against the Orlandos.  Sierra avers that the Orlandos made fraudulent misstatements and omissions on behalf of White Oak to Sierra (which were intended and actually were conveyed to the Investors) and profited from their fraudulent conduct to the tune of a $60,000 illegal commission.  Accordingly, Sierra's fraud claims do not rely upon scheme liability.

Second, the economic loss rule has no bearing on Sierra's fraud claims.  The economic loss rule does not operate on statutory claims, such as those pursuant to Fla. Stat. § 517.301 and 15 U.S.C. § 78j(b).  Comptech Int'l. v. Milam Commerce Park, Ltd., 753 So.2d 1219, 1222 (Fla.1999).  Similarly, the economic loss rule does not bar fraud in the inducement claims. May v.

Nygard Holdings Ltd., 203 Fed. Appx. 949, 951 (11th Cir. Oct. 12, 2006); Allen v. Stephan Co., 784 So.2d 456, 457 (Fla. 4th DCA 2000) ("The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement).

Third, Sierra has adequately pled reliance despite the merger clause. Indeed, reliance is presumed in cases involving omissions. Affiliated Ute Citizens Of The State Of Utah v. U.S., 406 U.S. 128, 153-54 (1972) (in cases involving omissions, "positive proof of reliance is not required"). White Oak and Statham argue that the Investors could not have relied on their fraudulent misstatements because the merger clauses in the Subscription Documents bar such reliance. In synthesizing this area of law, S&B Investments, LLC v. Motiva Enter., LLC, No. 03-61993-CIV, 2004 WL 3250306, *4-5 (S.D. Fla. Dec. 6 2004) held that a merger clause in itself will not preclude justifiable reliance. Rather, the test for whether a later written agreement bars justifiable reliance is whether it directly contradicts the earlier misstatements or omissions. Id.; see also Barnes v. Burger King Corp., 932 F. Supp. 1420, 1427-28 (S.D. Fla. 1996). In this instance, the Subscription Documents do not bar Sierra's fraud claims because they are **consistent** with the Defendants' failure to disclose that the Orlandos would receive a $60,000 in connection with the Offering.

The cases cited by the Orlandos are easily distinguishable. Mergens v. Dreyfoos, 166 F.3d 1114 (11th Cir. 1997) and Pettinelli v. Danzig, 722 F. 2d 706 (11th Cir 1984) concern settlement agreements negotiated between adversaries with preexisting disputes in which they expressly released claims not addressed. There is no allegation that Sierra or the Investors had an adversarial relationship with the Defendants and no claims were released. In Garcia v. Santa Maria Resort, Inc., 528 F.Supp.2d 1283 (S.D. Fla. 2007), no fraud claim existed because

the written contract directly contradicted the alleged fraudulent misrepresentation.  Here, the fraudulent misrepresentations and omissions are consistent with the Subscription Documents.

Lastly, the Orlandos argue that Sierra has not pled facts sufficient to show how the Orlandos could have known that $60,000 of the Investors' investments funds would be diverted to the Orlandos. Motion at p. 15.  On the contrary, Sierra has alleged that the Orlandos created the idea for the Offering and that they were the ones who were to receive the $60,000 commission.  Complaint at ¶¶ 12, 14. The Orlandos further argue that Sierra does not allege how the misstatements and omissions reached the Investors.  Sierra alleges that it communicated the misstatements and omissions to the Investors.  Complaint at ¶¶ 18, 23-25. Therefore, Sierra has pled fraud with particularity.

### 2. Sierra Has Stated A Claim For Unjust Enrichment.

Sierra properly alleges a claim for unjust enrichment against the Orlandos.  The Orlandos argue that unjust enrichment is inappropriate where an express contract exists.  Sierra does not quarrel with this statement.  However, there is no express contract between the Orlandos and Sierra (or the Investors).

In any event, Sierra may plead the unjust enrichment claim as an alternative to its claim for breach of contract should this Court determines that an express contract with White Oak does not exist.  Inconsistent and alternative pleading is permitted under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(d)(2)(3).  A breach of contract claim and an unjust enrichment claim are alternative claims and, until an express enforceable contract is proven, the equitable claim of unjust enrichment is not barred. Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA 1998); Manicini Enterprises, Inc. v. American Express Co., 236 F.R.D. 695, 699-

700 (S.D. Fla. 1996). As such, Sierra has stated a claim against the Orlandos for unjust enrichment.

## CONCLUSION

The Motion should be denied.

Dated: August 25, 2008
Boca Raton, Florida

        GREENBERG TRAURIG, P.A.
        5100 Town Center Circle, Suite 400
        Boca Raton, Florida 33486
        Telephone: (561) 955-7600
        Fax: (561) 338-7099

        By: _s/Geoffrey M. Cahen_____
        STEPHEN A. MENDELSOHN
        Florida Bar No: 849324
        mendelsohns@gtlaw.com
        GEOFFREY M. CAHEN
        Florida Bar No: 0013319
        caheng@gtlaw.com

## CERTIFICATE OF SERVICE

**HEREBY CERTIFY** that on this 25th day of August, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/Geoffrey M. Cahen_____
        Geoffrey M. Cahen

**SERVICE LIST**
**Sierra Equity Group, Inc. v. White Oak Partners, LLC, et al.**
**Case No: 08-80017-CIV-MARRA/JOHNSON**
**United States District Court, Southern District of Florida**

Ronald D. Poltorack, Esq.
Ronald D. Poltorack, P.A.
200 W. Palmetto Park Road
Suite 301
Boca Raton, FL 33432

Kelley Anne Luther, Esq.
Clarke Silvergate & Campbell, P.A.
799 Brickell Plaza, Suite 900
Miami, FL 33131

Michael Bowen, Esq.
Kasowitz Benson Torres & Freidman LLP
1633 Broadway
New York, NY 10019