UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-80017-CIV-MARRA/JOHNSON

SIERRA EQUITY GROUP, INC.,as
assignee of Michael E. Splain, James W.
Lees, and the Andrew Revocable Trust,

      Plaintiff,

v.

WHITE OAK EQUITY PARTNERS, LLC,
ROSS STATHAM, individually, PHILIP
ORLANDO, individually, and ANTHONY
ORLANDO, individually,

      Defendants.

_____/

## OPINION AND ORDER ON MOTIONS TO DISMISS

THIS CAUSE comes before the Court on Defendants White Oak and Statham's Motion to Dismiss (DE 35) and Defendants Philip Orlando and Anthony Orlando's Motion to Dismiss the First Amended Complaint (DE 36). The motions are now fully briefed and ripe for review. The Court held a hearing on the motions on March 18, 2009. Following the hearing, Plaintiff and the Orlando Defendants filed supplemental memoranda as requested by the Court. (DE 57, 58). The Court has carefully considered the motions and is otherwise fully advised in the premises.

### Background

On December 5, 2007, Plaintiff Sierra Equity Group, Inc. ("Plaintiff") filed a Complaint against Defendants White Oak Equity Partners, LLC ("White Oak"), Ross Statham, Philip

Orlando, and Anthony Orlando.  The case was subsequently removed to this Court on January 9, 2008.

This action arises out of a private offering of securities.  (Am. Compl. ¶ 1).  Plaintiff alleges that investors provided funds in connection with the offering, which was never completed in accordance with the representations of the Defendants. (Am. Compl. ¶ 1).   The investors never received the promised securities and, despite their demands, the investors' funds were never returned. (Am. Compl. ¶ 1).  Plaintiff asserts claims of Breach of Contract against White Oak (Count I); Unjust Enrichment against White Oak and the Orlandos (Count II); Fraudulent Inducement against all Defendants (Count III); Declaratory Judgment against White Oak (Count IV); Violation of Section 517.301, Florida Statutes, against all Defendants (Count V); and Violation of 15 U. S. C. § 78j(b) against all Defendants (Count VI).

The Amended Complaint alleges that in early 2006, the Orlandos contacted Statham in Georgia to discuss the White Oak securities transaction. (Am. Compl. ¶ 12).  Statham and the Orlandos, "on behalf of White Oak, contacted Sierra in Florida, via telephone, and advised Sierra that White Oak intended to offer securities to certain qualified investors."  (Am. Compl. ¶ 15). During the telephone call, the Defendants failed to advise Sierra that the Orlandos would receive a commission or otherwise profit from the Offering."  (Am. Compl. ¶ 16).

A Selling Agreement, dated August 23, 2006, was executed by White Oak and Plaintiff. (Am. Compl. ¶ 19-20, Exh. A).  In the Selling Agreement, White Oak contracted to use Plaintiff as a selling agent and to sell, through Plaintiff, an "Offering" of up to $232,000 in convertible debt securities in White Oak to investors.  (Am. Compl. ¶ 19).  Under the Selling Agreement, White Oak represented that it would use the proceeds from the Offering to pay Plaintiff a cash

commission and to acquire Gem Systems Common Stock and Volptech Common Stock. (Am. Compl. ¶ 20). The Selling Agreement did not state that the Orlandos would receive compensation in connection with the Offering. (Am. Compl. ¶ 21, 34). Plaintiff then solicited three investors (located in Arizona, California, and Massachusetts), each of whom contributed to the investment. The contribution from all three investors totaled $232,000. (Am. Compl. ¶¶ 23-29). The investors also each signed a Subscription Agreement stating that White Oak would use the proceeds to buy common shares of Gem Systems and Volptech. (Am. Compl. Ex. B). White Oak received the investors' funds, but it failed to execute the Subscription Agreements, failed to buy Volptech shares and, upon demand, failed to return the money to the investors. (Am. Compl. ¶¶ 35-46). White Oak provided at least $60,000 of the funds tendered by the investors to the Orlandos as compensation contingent upon the Offering being successful. (Am. Compl. ¶ 39). The investors assigned their right, title and interest in the Offering, the Subscription Agreement and in White Oak to Plaintiff. (Am. Compl. ¶ 48, Exh. I).

In the Amended Complaint, Plaintiff asserts that the Court may exercise personal jurisdiction over all Defendants pursuant to Fla. Stat. § 48.193(1)(b) for committing a tortious act within the State of Florida and because Defendants engage in substantial and not isolated activity within Florida. (Am. Compl. ¶¶ 3-6.) Further, Plaintiff asserts that Defendant White Oak consented by contract to personal jurisdiction in Florida. On April 15, 2008, the parties were granted sixty (60) days to complete jurisdictional discovery (DE 21). Subsequently, all Defendants filed motions to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (DE 35, 36).

3

*Jurisdictional Facts*

<u>White Oak and Statham</u>

Defendant White Oak Equity Partners, LLC ("White Oak") is a Georgia limited liability company.  (Declaration of Ross Statham, DE 7-2 at ¶ 6).  Defendant Ross Statham ("Statham") is a resident of Georgia and is White Oak's Managing Partner.  (Declaration of Ross Statham, DE 7-2 at ¶¶ 2, 5).  According to Statham's Declaration, he is a resident and citizen of Georgia; he votes in Georgia; he does not reside in Florida; he does not work in Florida; he does not own real property in Florida; he does not file or pay taxes in Florida; he does not maintain an office, telephone number or mailing address in Florida; he does not engage in business in Florida; he has not attended any business meetings in the last five years in Florida; he does not regularly travel to Florida; and he never met any representative of Plaintiff in Florida. (Declaration of Ross Statham, DE 7-2 at ¶¶ 2, 15-19, 21, 23, 25, 26-27).

Also, according to Statham's Declaration, White Oak does not own real property in Florida; it does not file or pay taxes in Florida; it does not maintain an office, telephone number or mailing address in Florida; no representative of White Oak has attended any business meetings in the last five years in Florida; and it does not engage in business in Florida. (Declaration of Ross Statham, DE 7-2 at ¶¶ 6, 20, 22, 24).

In early 2006, the Orlandos contacted Statham in Georgia to discuss the White Oak securities transaction. (Am. Compl. ¶ 12).  Statham and the Orlandos, "all purportedly on behalf of White Oak, contacted Sierra in Florida, via telephone, and advised Sierra that White Oak intended to offer securities to certain qualified investors."  (Am. Compl. ¶ 15).  During the telephone call, the Defendants failed to advise Sierra that the Orlandos would receive a

commission or otherwise profit from the Offering. "  (Am. Compl. ¶ 16).

Thereafter, on or about August 23, 2006, Statham executed the Selling Agreement as Managing Partner of White Oak in Georgia.  (Declaration of Ross Statham, DE 7-2 at ¶ 31). According to the terms of the "Selling Agreement," to which White Oak and Sierra are parties, "[e]ach party hereby consents to any and all actions or controversies arising from this agreement shall [ ] have venue in the exclusive jurisdiction of the state and federal courts located in Palm Beach County, Florida." (Am. Compl. Exh. A, § 9.10).  There are also provisions in the unsigned Subscription Agreement (Am. Compl. Exh. B, § 9(d)) and unsigned convertible note (Am. Compl. Exh. C, § 4.6) which provide for jurisdiction in Palm Beach County, Florida.

The three investors wired the funds in question to White Oak in Georgia from the states of their respective residency and citizenship, California, Arizona, and Massachusetts. (Declaration of Ross Statham, DE 7-2 at ¶¶ 8, 9, 10, 11).

White Oak and Statham communicated by telephone with Sierra in Florida in connection with the purported Offering.  (White Oak's Answers To First Set Of Interrogatories, DE-40, at ¶ 5; Statham Dep., DE 44 at 27:13-22, 33:23-34:4).  According to the Affidavit of Alan Goddard, Statham and Goddard participated in approximately ten phone calls related to the Offering (DE 46 at ¶ 7).  Statham and Goddard also engaged in a great amount of email and other correspondence with Sierra in connection with the purported Offering.  (DE 47 Ex. A; Statham Dep., DE 44 at 33:23-34:4; Goddard Aff., DE-46 at ¶ 8).  Additionally, Statham personally created Sierra's website and made various changes to the website after it was completed. (Statham Dep, DE 44 at 28:5-30:1).

<u>Philip and Anthony Orlando</u>

With respect to the Orlandos, the Amended Complaint alleges, in part:

12.  In early 2006, the Orlandos contacted Statham in Georgia to discuss a securities transaction in which a private company would be reverse merged into the shell of a public company.  The Orlandos asked Statham whether he had a "clean" entity which they could use to accomplish this transaction and ultimately sell this investment to qualified investors.  Statham offered the Orlandos White Oak as the entity to accomplish this transaction and the Orlandos consented.

13.  Specifically, the transaction involved the reverse merger of Volptech International, Inc. ("Volptech") into a public shell company, Gem Systems, Inc. ("Gem").  The Orlandos were integral in structuring and negotiating the transaction.

14.  White Oak and Statham agreed to pay the Orlandos a substantial commission contingent upon the completion of the securities transaction.

15.  Soon thereafter, Statham, Philip Orlando and Anthony Orlando, all purportedly on behalf of White Oak, contacted Sierra in Florida, via telephone, and advised Sierra that White Oak intended to offer securities to certain qualified investors.  During this telephone conversation, Philip Orlando and Anthony Orlando both stated to Alan Goddard of Sierra that White Oak intended to acquire shares of restricted common stock of Gem and Volptech with the proceeds of the Offering. . . .

16.  During the telephone call, the Defendants failed to advise Sierra that the Orlandos would receive a commission or otherwise profit from the Offering. . . .

18.  The Defendants intended that Sierra would pass on the representations and omissions made during this telephone conversation to potential investors and the Defendants intended for those potential investors to rely upon these representations and omissions.

Defendants Philip and Anthony Orlando ("the Orlandos")"are life-long residents of New York," and both currently reside and work in New York.   (Dec. of P. Orlando, DE 5-2 at ¶ 2; Dec. of A. Orlando, DE 5-3 at ¶ 2 ).  They have never had an office, work mailing address, or work telephone number in Florida; they do not own any real property or other assets in Florida; they do not file or pay taxes in Florida.  (Dec. of P. Orlando, DE 5-2 at ¶ 5, 6, 7, 8; Dec. of A. Orlando, DE 5-3 at ¶ 5, 6, 7, 8 ).

The Orlandos conducted activities in connection with the Offering on behalf of White Oak. (Goddard Aff., DE-46, at ¶ 5).  They worked with Florida-based Sierra to identify investors for the Offering.  (Statham Dep., DE-44, 39:21-40:4).  The Orlandos took four trips to Florida to discuss the Offering with Sierra.  (See DE 41, 42 at ¶ 2; Goddard Aff. at ¶ 9; see DE 48 Ex. "C" Orlandos' travel records).  During at least one of these trips, the Orlandos met with executives from Volptech in Florida.  (Dep. of P. Orlando, DE 45 at 92:21-94:4; Dep. of A. Orlando, DE 43 at 60:18-64:14).

The Orlandos made hundreds of phone calls to Sierra in Florida. (See DE 48 Ex. "A" telephone records; Goddard Aff., DE 46, at ¶ 6).  However, the parties dispute whether the majority of the extensive phone contact had to do with the White Oak Offering or other unrelated transactions.  Sierra claims that most of the calls involved discussion of White Oak:

> During the time period of 2006 through the present, I have participated in hundreds of telephone calls with Anthony and Philip Orlando.  In approximately 90% of these calls, we discussed matters relevant to the Offering of White Oak Equity Partners, LLC securities.  During approximately 80% of these calls, we discussed matters relevant to other proposed business deals in Florida.

(Goddard Aff., DE 46, at ¶ 6).  The Orlandos, on the other hand, claim that most of the telephone contact had to do with transactions other than White Oak :

> Q. Can you tell approximately how many of those calls you made to Mr. Goddard or at least Morningside made to Goddard referred to White Oak?
> A. I have no way of knowing.  If you were to ask me on a percentage basis the total calls to Alan Goddard?
> Q. Yes, sir.
> A. Very small

(Dep. of P. Orlando, June 11, 2008 (Exhibit A, DE 51-2) at 50).  The Orlandos also communicated extensively with Sierra via email concerning the Offering. (See DE 48 Ex. "B"

email records; Goddard Aff., DE 46, at ¶ 8).

Additionally, from 2006 to the present, the Orlandos identified approximately 18 other transactions in which they have been involved with Florida-based persons.  (See DE 41, 42 at  ¶ 3; Schedule "A" to DE 42; Exhibit "D" to DE 48).  During their four trips to Florida, the Orlandos met with many of the individuals involved in their business deals.  (See DE 48 Ex. "B" email records; Goddard Aff. DE 46, at ¶ 9).  The Orlandos' telephone records indicate many telephone calls to businesses in Florida that were associated with these 18 business transactions. (See DE 48 Ex. "A" telephone records).  The Orlandos were previously registered under the blue sky laws of Florida.  (See DE 41, 42 at  ¶ 12).

The Orlandos did not receive compensation from any entity or individual located in Florida.  (See P. Orlando Dep., Exh. "A," DE 51-2, at 25:22- 26:5; A. Orlando Dep., Exh. "B", DE 51-3, at 55-71).  The Orlandos emphasize that they did not seek business in Florida, but rather participated in these Florida discussions at the request of Goddard and Sierra Equity and on their behalf. (See P. Orlando Dep., Exh. "A," DE 51-2, at 55-62; A. Orlando Dep., Exh. "B", DE 51-3, at 55-71).

**Analysis**

*Personal Jurisdiction*

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits. See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); Corneal v. CF Hosting, Inc., 187 F.Supp.2d 1372, 1373 (S.D. Fla. 2001).  The parties have submitted evidentiary materials in support of their respective positions.  While the consideration of such

materials ordinarily would convert a motion to dismiss into one for summary judgment, see

Fed.R.Civ.P. 12(b), in the context of personal jurisdiction the motion remains one to dismiss

even if evidence outside the pleadings is considered.  Bracewell v. Nicholson Air Services, Inc.,

748 F.2d 1499, 1501 n.1 (11th Cir. 1984).  An evidentiary hearing on a motion to dismiss for

lack of personal jurisdiction is discretionary but not mandatory.  See, e.g., Madara v. Hall, 916

F.2d 1510, 1514 (11th Cir.1990); Bracewell, 748 F.2d at 1504.  Because the parties did not

request an evidentiary hearing, the Court exercises its discretion not to conduct one.

       The Court must accept as true all allegations of the complaint that are not controverted by

evidence submitted by the defendant. Id.  Once the plaintiff pleads sufficient material facts to

form a basis for personal jurisdiction, the burden shifts to the defendant to challenge the

plaintiff's allegations by affidavits or other pleadings. See Future Tech. Today, Inc. v. OSF

Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).  When the nonresident defendant meets

this burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by

affidavits or other competent proof," and may not merely rely upon the factual allegations set

forth in the complaint. See Future Tech. Today, Inc., 218 F.3d at 1249; Posner v. Essex Insurance

Co., 178 F.3d 1209, 1215 (11th Cir. 1999).  Where the plaintiff's evidence and defendant's

evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. Stubbs v.

Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006);

Molina v. Merritt & Furman, 207 F.3d 1351, 1356; Morris v. SSE, Inc., 843 F.2d 489, 492 (11th

Cir. 1988).

       A determination of whether personal jurisdiction over a nonresident defendant exists

requires a two-part inquiry.  First, the Court must consider the jurisdictional question under the

Florida state long-arm statute.  Robinson v. Fiarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996);

see also Fla. Stat. § 48.193(1). If there is a basis for the assertion of personal jurisdiction under

the state statute, the court will next determine "whether the exercise of personal jurisdiction over

the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United

States Constitution, which requires that the defendant have minimum contacts with the forum

state and that the exercise of jurisdiction over the defendant does not offend traditional notions of

fair play and substantial justice." Mut. Serv. Ins. Co. v. Frit Indus., 358 F.3d 1312, 1319 (11th

Cir. 2004) (internal quotations omitted).  Only if both prongs of the analysis are satisfied may a

federal or state court exercise personal jurisdiction over a nonresident defendant. See Robinson,

74 F.3d at 256.

1. Florida's Long-Arm Statute

Florida's long-arm statute authorizes courts to exercise specific jurisdiction under §

48.193(1), Florida Statutes.  Florida's long-arm statute states, in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or
> through an agent does any of the acts enumerated in this subsection thereby
> submits himself or herself and, if he or she is a natural person, his or her personal
> representative to the jurisdiction of the courts of this state for any cause of action
> arising from the doing of any of the following acts: ...
> (b) Committing a tortious act within this state.

§ 48.193(1)(b), Fla. Stat.  "Because the reach of the Florida long-arm statute is a question of

Florida state law, federal courts are required to construe it as would the Florida Supreme Court."

Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (11th

Cir. 1983) (citing Moore v. Lindsey, 662 F.2d 354, 357-58 (5th Cir. 1981).  Furthermore, the

Florida long-arm statute is to be strictly construed. Id. at 891.

_____ Sierra argues that the Court has specific jurisdiction over Defendants under Florida's long-arm statute, which provides for jurisdiction against defendants who "commit[] a tortious act within this state." § 48.193(1)(b), Fla. Stat.   The tort-feasor's physical presence in Florida is not required to obtain personal jurisdiction. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 (11th Cir. 2005). "[A]llegations about an out-of-state defendant's 'telephonic, electronic, or written communications into Florida' are sufficient to trigger jurisdiction under the Long-Arm statute provided, however, that the cause of action arises from those communications." See American Color Graphics, Inc. v. Brooks Pharmacy, Inc., 2007 WL 3202748 (M.D. Fla. 2007) ("It is well-settled that a tortious act can occur in Florida 'through the nonresident defendant's telephonic, electronic, or written communications into Florida.' ") (quoting Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002); ABL-USA Enters., Inc. v. Hawk Aviation, Ltd., 15 F.Supp.2d 1297, 1300 (S.D. Fla. 1998) (tortious interference accomplished by telephone calls into Florida); Acquadro v. Bergeron, 851 So.2d 665, 677 (Fla. 2003) (allegations sufficient to support jurisdiction where nonresident allegedly committed defamation in a single telephone call into Florida).

_____ Moreover, fraudulent misrepresentations made from outside Florida and directed into Florida (by phone, fax, writing) constitute tortious acts committed within Florida under Florida's long-arm statute. Machtinger v. Inertial Airline Services, Inc., 937 So.2d 730, 735 (Fla. 3d DCA 2006).  Contrast Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030 (11th Cir.1991) (no personal jurisdiction where the defendant made fraudulent misrepresentations over the telephone because the defendant did not purposefully direct its activities at Florida residents and the calls were merely fortuitous contacts).  Florida district courts have found long-arm jurisdiction over

nonresident defendants accused of making fraudulent misrepresentations and omissions via telephone. See Hollingsworth v. Iwerks Entertainment, Inc., 947 F.Supp. 473, 478 (M.D. Fla. 1996).

Here, the Amended Complaint alleges that Statham and the Orlandos, on behalf of White Oak, made a telephone call into Florida during which they made fraudulent representations, but more importantly, omitted material facts regarding their intended use of the investor funds. Am. Compl. at ¶¶15, 65-70.  Defendants intended that Sierra would pass on the representations, absent the material information that was omitted, in order to induce the investors into purchasing the securities.  Am. Compl. at ¶¶ 18, 65-68.   Relying on the representations and fraudulent omissions of Defendants, Sierra advised its clients to invest in the Offering.  Am. Compl. at ¶¶ 23-24, 69-70.  Defendants intended for the potential investors to rely upon those passed-on representations and omissions.  Am. Compl. at ¶¶ 18, 67-68.  Accordingly, the Amended Complaint has sufficiently alleged a tortious act committed by a telephone call into Florida as a basis for Florida long-arm jurisdiction under § 48.193(1)(b), Fla. Stat.

To determine whether the requirements of the Florida long-arm statute have been met, the Court must decide if the evidence demonstrates that Defendants committed the alleged tort of fraudulent misrepresentation or omission during the telephone call at issue.  That determination clearly requires a decision on the merits of the case.  Issues involving details about what was said during this telephone call, whether Sierra and its investors relied on the representations and whether the omissions were material and, if know, would have affected the investors' decisions are "the very contested issues to be resolved in trying the cause of action." Krilich v. Wolcott, 717 So.2d 582, 584 (Fla. 4th DCA 1998).  In situations "[w]here the jurisdictional issues are

12

intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.'" Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 733 (11th Cir. 1982) quoting Chatham Condo . Assocs . v. Century Village, Inc ., 597 F.2d 1002, 1011 (5th Cir. 1979).[1]  Reaching the merits requires developing a full factual record relating to jurisdictional issues. See id. at 729 ("federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits.") Accordingly, the Court will exercise its discretion to reserve ruling on the jurisdictional issues until a decision on the merits can be rendered.[2]  See Nissim Corp. v. Clearplay, Inc., 351 F. Supp. 2d 1343 (S.D. Fla. 2004) (since personal jurisdiction over corporate officer will turn on whether the plaintiff could prove allegations that corporate officer actively induced patent infringement it is necessary to defer ruling on jurisdictional issue until trial or summary judgment).[3]

---

[1] Although Eaton and the binding Fifth Circuit cases upon which it relies address subject matter jurisdiction, the Court concludes that the reasoning of these cases apply with equal force to personal jurisdiction.

[2] Defendants may renew their arguments in a summary judgment motion.  However, if genuine issues of material issues of fact exist, then the issue will need to be presented at trial. Lawrence v. Dunbar, 919 F.2d 1525, 1530 (11th Cir. 1990).

[3] The alleged tort of fraudulent misrepresentation or omission and the other tort and contract-related claims in this case arise out of a common nucleus of operative facts.  Thus, the doctrine of "pendent personal jurisdiction" comes into play.  Under this doctrine, as long as personal jurisdiction can be asserted over Defendants for the tort claims, there would be also be personal jurisdiction over them for the related claims.  See Cincinnati Ins. Co. v. Belkin Corp., No. 07-0615-WS-C, 2008 WL 4949783, at * 16 (S.D. Ala. Nov. 14, 2008) citing Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174 (9th Cir. 2004); United States v. Botefuhr, 309 F.3d 1263, 1272-75 (10th Cir.2002); Robinson Eng'g Co., Ltd. Pension Plant Trust v. George, 223 F.3d 445, 449-50 (7th Cir.2000); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 628-29 (4th Cir.1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056-57 (2d Cir.1993); Oetiker v. Werke, 556 F.2d 1, 5 (D.C.Cir.1977); Robinson v. Penn Cent. Co., 484 F.2d 553, 555-56 (3d Cir.1973). Additionally, White Oak is subject to personal jurisdiction in Florida by contract. See infra.

13

Additionally, White Oak is subject to personal jurisdiction in Florida by contract.  "The requirement of personal jurisdiction represents an individual due process right, and the 'parties to a contract may agree in advance to submit to the jurisdiction of a given court.' " Hickman v. Terrell, 2008 WL 4417297, *3 (M.D. Ala. 2008) (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704 (1982).  Here, the Selling Agreement contains a provision stating that each party to the contract (Sierra and White Oak) "consents to any and all actions or controversies arising from this agreement shall have venue in the exclusive jurisdiction of the state and federal courts located in Palm Beach County, Florida."  (Am. Compl. ¶ 8, Exh. A to Complaint at § 9.10).  The Subscription Agreements, upon which Sierra, as assignee of the investors, is suing, contain a similar provision stating "The parties and the individuals executing this Agreement and other agreements referred to herein or delivered in connection herewith on behalf of the Company agree to submit to the personal jurisdiction of [the civil or state courts of Florida or in the federal courts located in Palm Beach County, Florida]." (Exh. B to Complaint at § 9(d)).  In some states, "[s]uch conferrals of exclusive jurisdiction have been specifically recognized as including *consents to personal jurisdiction*." Rescuecom Corp. v. Chumley, 522 F.Supp.2d 429, 443 (N.D. N.Y. 2007) (string citing cases standing for this proposition) (emphasis in original).  See also Suntrust Bank v. G.R. Auto Supply, Inc., 2007 WL 2226058, *1 (N.D. Ga. 2007) ("The Court further finds that the parties consented to personal jurisdiction in this court by agreeing in the loan contract to have all disputes heard in Georgia.").

While it is true that a forum clause cannot operate as the "sole basis" to exercise personal jurisdiction in Florida over an objecting nonresident defendant, that is not the case at bar.  Here,

14

not only did White Oak agree to exclusive jurisdiction in Florida, but it also contracted to use

Sierra, a Florida corporation, as its selling agent to sell the "Offering" of up to $232,000 in

convertible debt securities in White Oak to investors[4] and it allegedly committed the tort of

fraudulent inducement during the telephone call at issue.[5]  (Am. Compl. ¶ 2, 19, 64-70).

    2. Due Process

An exercise of jurisdiction under a state's long-arm statute must also comport with due

process.  Due process authorizes the exercise of personal jurisdiction over a nonresident

defendant when "(1) the nonresident defendant has purposefully established minimum contacts

with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair

play and substantial justice." S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation

omitted); see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162,

1166 (11th Cir. 2005). Just a single act by a non-resident defendant directed to a forum state can

be enough to confer specific personal jurisdiction if the act gave rise to the cause of action at

issue.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985).

---

[4]Under the terms of the Selling Agreement between Sierra and White Oak, each Closing between the investors and White Oak was to be held at Sierra's offices in Boca Raton, FL, at a time and date mutually agreed upon by White Oak and Sierra. (Am. Comp. Ex. "A" at ¶ 1.7.). The Subscription Agreements, similarly, provided for the Closings to occur at Sierra's offices in Boca Raton, Florida. (Am. Comp. Ex. "B" at ¶ 2.). It could also be argued that, by allegedly breaching the Subscription Agreements, White Oak is alleged to have breached a contract that was to be performed in Florida, providing an additional basis for long-arm jurisdiction against White Oak. See § 48.193(1)(g), Fla. Stat.

[5]Similarly, Statham can be bound by the Florida forum selection clause as he is the sole and controller shareholder of White Oak and, as such, the Offering would inure to his personal benefit.  See XR Co. v. Block & Balestri, P.C., 44 F.Supp.2d 1296, 1298 (S.D. Fla. 1999); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir.1998).  This is an additional factor supporting the conclusion that Statham should reasonably anticipate being haled into court in Florida.

*a. Minimum Contacts*

In contrast to general jurisdiction, "[s]pecific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." McGow v. McCurry, 412 F.3d 1207, 1214 n. 3 (11th Cir. 2005) (citation omitted). The exercise of personal jurisdiction on a specific jurisdiction theory is proper where a defendant's contacts with the forum state satisfy all of the following criteria: (1) they are related or give rise to the plaintiff's cause of action, (2) they involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. See, e .g., Sloss Industries Corp. v. Eurisol, 488 F.3d 922 (11th Cir. 2007); McGow, 412 F.3d at 1214. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state. Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 719 (Fla. 4th DCA 1998).

The Defendants' contacts with Florida in this case meet the above criteria for minimum contacts. First, by directing their tortious conduct to Florida, Defendants could have reasonably anticipated being haled into court here. See, e.g., OSI Industries, Inc. v. Carter, 834 So.2d 362 (Fla. 5th DCA 2003). Additionally, White Oak contracted with a Florida corporation, Sierra, to

be its selling agent for the Offering and to close on the transactions at Sierra's offices in Florida.[6] White Oak and Statham communicated by telephone with Sierra in Florida in connection with the purported Offering.  (White Oak's Answers To First Set Of Interrogatories, DE-40, at ¶ 5; Statham Dep., DE 44 at 27:13-22, 33:23-34:4).  According to the Affidavit of Alan Goddard, Statham and Goddard participated in approximately ten phone calls related to the Offering (DE 46 at ¶ 7).  See Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716 (Fla. 4th DCA 1998) (additional contacts with Florida established by communicating with plaintiff in Florida by telephone, telefax, and mail).   Statham and Goddard also engaged in a great amount of email and other correspondence with Sierra in connection with the purported Offering.  (DE 47 Ex. A; Statham Dep., DE 44 at 33:23-34:4; Goddard Aff., DE-46 at ¶ 8).

The Orlandos also had sufficient minimum contacts with Florida. The Orlandos worked with Sierra to identify investors for the Offering.  (Statham Dep., DE-44, 39:21-40:4).  They took four trips to Florida to discuss the Offering with Sierra.  (See DE 41, 42 at  ¶ 2; Goddard Aff. at ¶ 9; see DE 48 Ex. "C" Orlandos' travel records).  During at least one of these trips, the Orlandos met with executives from Volptech in Florida.  (Dep. of P. Orlando, DE 45 at 92:21-94:4; Dep. of A. Orlando, DE 43 at 60:18-64:14).  The Orlandos made hundreds of phone calls to Sierra in Florida, most of which concerned matters relevant to the Offering. (See DE 48 Ex. "A" telephone records; Goddard Aff., DE 46, at ¶ 6). (Dep. of P. Orlando, June 11, 2008 (Exhibit A, DE 51-2) at 50).  The Orlandos also communicated extensively with Sierra via email concerning the Offering.  (See DE 48 Ex. "B" email records; Goddard Aff., DE 46, at ¶ 8).

_____

[6]On or about August 23, 2006, Statham executed the Selling Agreement as Managing Partner of White Oak in Georgia.  (Declaration of Ross Statham, DE 7-2 at ¶ 31).

*b. Fair Play and Substantial Justice*

"Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Madara, 916 F.2d at 1517 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).  These other factors include "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." Id. (quoting Burger King, 471 U.S. at 476).

Here, the Court finds that assertion of personal jurisdiction over Defendants "comport[s] with fair play and substantial justice." Id. at 476 (citing International Shoe, 326 U.S. at 320) (internal quotation marks omitted).  Adjudicating this dispute against all parties in Florida will provide Plaintiff with convenient and effective relief and will serve judicial efficiency on an interstate level.  Indeed, the individual defendants will undoubtedly be witnesses at trial and thus will not be unduly burdened by answering the claims against them in one forum.  Lastly, Florida has a strong interest in adjudicating a dispute that involves a Florida corporation and a tort directed into Florida.  For these reasons, the Court finds that the requirements of reasonableness and fairness of asserting jurisdiction over Defendants have been met.

<u>Failure to State a Claim</u>

Defendants also argue that the Amended Complaint must be dismissed for failure to state

a claim. Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement

of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the

ground upon which it rests." Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do.  Factual allegations must be enough to raise a right to relief above the speculative

level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations

omitted).  When considering a motion to dismiss, the Court must accept all of the plaintiff's

allegations as true in determining whether a plaintiff has stated a claim for which relief could be

granted.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The Assignments

>        The Assignments at issue state, in pertinent part:

>        Transfer.  Effective immediately, ASSIGNOR hereby irrevocably contributes,
>        assigns, transfers, sells and conveys to the ASSIGNEE all of the ASSIGNOR'S
>        right, title and interest in the Subscription Agreement and in White Oak.

See Am. Compl. Exh. I.  "An assignment is a transfer of all the interests and rights to the thing

assigned.  Following an assignment, the assignee 'stands in the shoes of the assignor' and the

'assignor retains no rights to enforce the contract' at all." Leesburg Cmty. Cancer Ctr. v.

Leesburg Reg'l Med. Ctr., Inc., 972 So.2d 203, 206 (Fla. 5th DCA 2007) (internal citations

omitted).  As such, Sierra, standing in the shoes of the Investors for purposes of the Subscription

Agreements, may sue for breach of those contracts and for any cause of action in tort arising from

those contracts. See id.; Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So.2d 55,

57 (Fla. 2000) ("The right of an assignee to sue for breach of contract to enforce assigned rights predates the Florida Constitution."); <u>Continental Ins. Co. v. Roberts</u>, 2007 WL 1175760, *3 (M.D. Fla. 2007) (individual could not sustain claim for breach of contract unless contracting party "assigned her rights under that contract to him."); <u>ABL-USA Enterprises, Inc. v. Hawk Aviation, Ltd.</u>, 15 F.Supp.2d 1297 (S.D. Fla. 1998) (corporation brought suit for breach of contract and for tort claim arising from contract pursuant to party's purchase of all rights and interests under that contract).

<u>Count I- Breach of Contract against White Oak</u>

Count I, breach of contract against White Oak, alleges that White Oak breached the Subscription Agreements.  Am. Compl. ¶ 51-53.  Under Florida law, a breach of contract action requires a valid contract, a material breach of that contract, and damages. <u>Hanover Specialties, Inc. v. Playmaker Services LLC</u>, 2009 WL 455443, *7 (S.D. Fla. 2009).  <u>See Beck v. Lazard Freres & Co., LLC</u>, 175 F.3d 913, 914 (11th Cir.1999); <u>Miller v. Nifakos</u>, 655 So.2d 192, 193 (Fla. 4th DCA 1995).  Here,  Plaintiff has sufficiently alleged each of these elements.  The Amended Complaint alleges that (1) the Subscription Agreements are enforceable contracts; (2) pursuant to the Subscription Agreements, the Investors tendered $232,000.00 to White Oak; (3) White Oak accepted and deposited the money, thereby accepting the Subscription Agreement by conduct; and (4) White Oak breached the Subscription Agreements by failing to use the funds tendered by the Investors to acquire shares of Volptech Common Stock, by failing to deliver shares of GEM Common Stock to the Investors, and by using the proceeds of the Offering in an unauthorized manner (paying at least $60,000 to the Orlandos).  Am. Compl. ¶ 51-53.  The Amended Complaint also alleges that White Oak breached the implied covenant of good faith

and fair dealing by failing to provide accurate and timely information regarding the status of the acquisition of Volptech Common Stock and by failing to disclose the payments to the Orlandos. Am. Compl. ¶ 54.  Lastly, it alleges that White Oak's breaches of the Subscription Agreement caused the Investors to incur damages, including, but not limited to, the amount tendered by the Investors to White Oak pursuant to the Subscription Agreement.  Am. Compl. ¶ 55-56.

White Oak argues that, since the Subscription Agreement was not signed by White Oak, no claim for its breach can be made against White Oak. (Mot. at 19).  White Oak is incorrect because it ignores the concept of assent by performance.  A contract binds one who in some manner agreed to accept its terms.  Whetstone Candy Co., Inc. v. Kraft Foods, Inc., 351 F.3d 1067, 1073 (11th Cir. 2003).  "A contract may be binding on a party despite the absence of a party's signature.  The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." Gateway Cable T.V., Inc. v. Vikoa Construction Corp., 253 So.2d 461, 463 (Fla. 1st DCA 1971).  See also Consolidated Resources Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500, 503 (Fla. 4th DCA 2003) (party assented to the contract by performing under the contract).  The Amended Complaint alleges that in August, 2006, the Investors signed the Subscription Agreements and tendered their investment funds to White Oak. Am. Compl. ¶ 25.  White Oak may be bound by the Subscription Agreement based on its conduct in accepting and depositing the $232,000.00 in funds tendered by the Investors to White Oak pursuant to the Subscription Agreement.  If White Oak did not intend to be bound by the Subscription Agreement, it would have had no basis for retaining the Investor's funds.  Whether White Oak accepted or rejected the Subscription Agreement is a question of fact appropriate for summary judgment or trial, and cannot be

21

resolved on a motion to dismiss.  Sierra has stated a claim in Count I for breach of contract against White Oak.

Count II - Unjust Enrichment against White Oak and the Orlandos

Count II, unjust enrichment, sets forth an alternative theory by which Sierra seeks to recover the $232,000.00 tendered to White Oak by the Investors pursuant to the Subscription Agreements and the $60,000.00 allegedly provided to the Orlandos from the Investor's funds as undisclosed commission.  The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., 667 So.2d 876, 879 (Fla. 3d DCA 1996) (quoting Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994) (citations omitted)).

Defendants object to the unjust enrichment claim because Sierra pled a claim for breach of contract in Count I and a claim for unjust enrichment cannot be based on the same breach. See, e.g., Ocean Communications, Inc. v. Bubeck, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007). First, this argument is inapposite to the Orlandos because there is no express contract between the Investors and the Orlandos.

Moreover, Defendants' argument ignores the basic tenet of alternative pleading under Rule 8(d)(2) of the Federal Rules of Civil Procedure. Manicini Enterprises, Inc. v. American Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006).  While Sierra can only recover once for the same actual damages, regardless of the number of alternative theories presented, it is not barred

against pleading unjust enrichment simply because it has also plead breach of contract in Count I.

"Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on

these grounds is premature." Williams v. Bear Stearns & Co., 725 So.2d 397, 400 (Fla. 5th DCA

1998).

       The Orlandos also argue that the unjust enrichment claim fails as to them for two reasons.

First, they argue that there is no allegation that the Investors conferred a benefit on the Orlandos.

They argue that, at most, the allegations show that White Oak conferred a benefit on the

Orlandos.  See American Safety Ins. Service, Inc. v. Griggs, 959 So.2d 322, 331 (Fla. 5th DCA

2007) ("The plaintiffs must show they directly conferred a benefit on the defendants.").  As set

forth above, the uniformly stated elements of a cause of action for unjust enrichment under

Florida law are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge

thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the

circumstances are such that it would be inequitable for the defendant to retain the benefit without

paying the value thereof to the plaintiff. Peoples Nat'l Bank., 667 So.2d at 879.  Plaintiff has

alleged each of these elements against the Orlandos in the Amended Complaint. See Am. Comp.

¶¶ 57-63.  Whether the Orlandos did or did not receive a direct benefit from Plaintiff is a

question of fact that cannot be resolved at the motion to dismiss stage in this case.  See Romano

v. Motorola, Inc., 2007 WL 4199781 (S.D. Fla. 2007) (denying motion to dismiss unjust

enrichment claim) ("Defendant is correct in stating that "Florida law does not support a cause of

action for unjust enrichment unless the plaintiff can allege that he conferred a direct benefit on

the defendant."  However, Defendant erroneously equates direct contact with direct benefit in

arguing that "[b]ecause plaintiff here did not purchase either his phone or his batteries from

Motorola, plaintiff conferred no direct benefit on Motorola.") (internal citations omitted). Therefore, the Orlandos' motion to dismiss the unjust enrichment claim is denied without prejudice to raise this issue later in the proceedings at summary judgment or trial.

Second, the Orlandos argue that there is no allegation that they were paid the $60,000 *unfairly*, since it is alleged that "White Oak provided at least $60,000 of the funds tendered by the Investors to the Orlandos as compensation contingent upon the Offering being successful." Am. Compl. ¶ 39.  This argument is without merit.  The Offering was, by all accounts, not successful.  Moreover, the Orlandos are alleged to have been involved in the wrongful conduct through which they received the $60,000 benefit.

Count IV - Declaratory Judgment against White Oak

Count IV, declaratory judgment against White Oak, alleges that this is an action for a declaratory judgment as to entitlement to the funds being held by White Oak.  Am. Compl. ¶ 72. Sierra contends it is entitled to the funds tendered to White Oak by the Investors, whereas White Oak contends that it is entitled to retain the Investors' funds. Am. Compl. ¶ ¶ 73-74.   Sierra asks the Court to declare that Sierra is entitled to a return of the Investors' funds, with interest.

The Declaratory Judgment Act, 28 U.S.C. § 2201 states in pertinent part:

(a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.  The Supreme Court has held that "[t]he Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."  Public Affairs Associates, Inc. v. Rickover, 369 U.S.

24

111, 112 (1962).  "The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose."  Allstate Ins. Co. v. Employers Liability Assur. Corp., 445 F.2d 1278, 1280 (5th Cir. 1971).[7]  "The purpose behind the Declaratory Judgment Act is to afford a [ ] form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  Casualty Indem. Exch. v. High Croft Enter., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989).  The Declaratory Judgment Act "permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty."  See 10B C. Wright & A. Miller, Federal Practice & Procedure, Civil 3d § 2751 (2004).  Similarly, other courts have held that "declaratory judgment is inappropriate solely to adjudicate past conduct."  Gruntal & Co. v. Steinberg, 837 F. Supp. 85, 89 (D.N.J. 1993); see also Beazer Home Corp. v. VMIF/ Anden Southbridge Venture, LPI, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002) (a declaration that involves the adjudication of past conduct serves no useful purpose); Hoagy Wrecker Serv., Inc. v. City of Fort Wayne, 776 F. Supp 1350, 1358 (N.D. Ind. 1991) (the Declaratory Judgment Act was designed to prevent the accrual of avoidable damages, not those damages which had already occurred).

    Sierra's Declaratory Judgment Act claim asks for this Court to make factual determinations regarding possible breaches of contract and tortious acts that White Oak is alleged to have committed in the past.  There is no demand for relief that seeks a purely legal ruling, such

---

[7] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  See Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

as a request to resolve differences in the interpretation of specific language in an agreement.  Nor does the requested relief seek a result that would lead to a change in conduct by either party in order to conform their behavior to the law or to minimize the danger of future monetary loss by the parties.

Thus, in order to render a declaratory judgment, the Court would need to make various factual determinations regarding the past conduct of the parties.  However, questions regarding whether torts have been committed or a contract was adequately performed is unrelated to the purpose behind the Declaratory Judgment Act.  Indeed, the purpose of the Declaratory Judgment Act is to clarify the legal relations at issue and to settle controversies prior to a legal breach of duty or contract.  See e.g., Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp., 190 F.2d 985, 989 (10th Cir. 1951) ("a party to a contract is not compelled to wait until he has committed an act which the other party asserts will constitute a breach, but may seek relief by declaratory judgment and have the controversy adjudicated in order that he may avoid the risk of damages or other untoward consequences.").   Here, the Court concludes that Sierra has failed to allege sufficiently a basis upon which declaratory relief would be appropriate.  Therefore, the Court finds that declaratory relief is inappropriate and grants Defendant's motion to dismiss this claim.

Count III, V, and VI - The Fraud Claims Against All Defendants

Count III (fraudulent inducement against all Defendants), Count V (violation of Section 517.301, Florida Statutes ), and Count VI (violation of 15 U.S.C. § 78j(b) ) each allege fraud-based claims against all Defendants.  Defendants contend that Sierra has failed to state claims for fraud and securities fraud because: (1) fraud is not pled with particularity; (2) the claims are impermissibly founded upon "scheme liability"; (3) the Investors could not have relied upon any

misrepresentations or omissions because they were made directly to Sierra; (4) Sierra cannot

demonstrate reliance; and (5) the economic loss rule bars such claims.  The Court addresses each

argument in turn.

First, the Orlandos argue that fraud is not pled with the required particularity.[8]

Specifically, the Orlandos argue that, "[w]hile plaintiff alleges in a conclusory way that the

Orlandos knew that White Oak intended not to use the proceeds of the transaction as required

under the written contract terms and instead intended to divert $60,000 to the Orlandos, nothing

in the Amended Complaint provides any basis for concluding the Orlandos could have known

that." (Mot. at 15).    The Orlandos are incorrect.   The Amended Complaint alleges that, *prior* to

the telephone call at issue in which allegedly fraudulent misrepresentations and omissions were

made regarding the nondisclosure of the Orlandos' commission, White Oak, Statham, and the

Orlandos *agreed* that the Orlandos would be paid a substantial commission contingent upon the

completion of the securities transaction.  Am. Compl. ¶ 14-15.  Thus, contrary to the Orlandos'

present argument, Plaintiff has provided a basis for alleging that the Orlandos knew that White

Oak intended not to use the proceeds of the transaction as disclosed to Plaintiff at the time of the

telephone call at issue.

The Orlandos also argue that the fraud claims must be dismissed because they are

---

[8]The Eleventh Circuit has held:
   Rule 9(b) is satisfied if the complaint sets forth (1) precisely what ... oral
   representations or what omissions were made, and (2) the time and place of each
   such statement and the person responsible for making (or, in the case of
   omissions, not making) same, and (3) the content of such statements and the
   manner in which they misled the plaintiff, and (4) what the defendants obtained as
   a consequence of the fraud.

Ziemba v. Cascade Intl., 256 F.3d 1194, 1202 (11th Cir. 2001).

impermissibly founded upon "scheme liability."  Specifically, they argue that Sierra has not made

any direct allegations against them and that "scheme liability" for securities fraud has been

foreclosed by Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 128 S.Ct. 761 (2008).

However, the "scheme liability" doctrine is inapplicable here because Sierra alleges direct

liability against the Orlandos.  Specifically, Sierra alleges that Statham and the Orlandos, "all

purportedly on behalf of White Oak, contacted Sierra in Florida, via telephone, and advised

Sierra that White Oak intended to offer securities to certain qualified investors."  (Am. Compl. ¶

15).  During the telephone call, the Defendants failed to advise Sierra that the Orlandos would

receive a commission or otherwise profit from the Offering. "  (Am. Compl. ¶ 16).  Defendants

intended that Sierra would pass on the representations and omissions to potential investors, who

would rely upon them, and Sierra did so. (Am. Compl. ¶ 18, 24).  The Orlandos' actions are

directly tied to the alleged misstatements and omissions, which is more than adequate to satisfy

the requirements of Stoneridge.  Accordingly, Sierra's claims do not rely upon "scheme liability"

and the Orlandos' argument is inapposite under the allegations of the Amended Complaint.

        Defendants also argue that the Investors could not have relied upon any

misrepresentations or omissions, or that the misrepresentations and omissions were not material,

because they were made directly to Sierra, not to the Investors.  The court rejected this argument

for purposes of a motion to dismiss in Slayter v. DC 701, LLC, 2009 WL 223838 (M.D. Fla.

2009):

>         Finally, the Court rejects Stokes's contention that the claims asserted by
> Plaintiffs Donald and Camille Gillis should be dismissed because they have not
> alleged that Stokes directly communicated with them any fraudulent
> misrepresentation or omission. Their allegation that "Stokes knew his false
> representations to [co-Plaintiffs] the Clarks and Peter Gillis were being passed

> along to [them]" is sufficient to state a claim. ( Id. at ¶ 51.) Under § 10(b), "there
> is no requirement that the alleged violator directly communicate
> misrepresentations to investors for primary liability to attach." SEC v. Wolfson,
> 539 F.3d 1249, 1261 (10th Cir. 2008) (citations omitted).

Id. at *3.  Similarly, here Sierra has alleged that Statham and the Orlandos, all purportedly on

behalf of White Oak, contacted Sierra in Florida, via telephone, and advised Sierra that White

Oak intended to offer securities to certain qualified investors.  During this telephone

conversation, Philip Orlando and Anthony Orlando both stated to Alan Goddard of Sierra that

White Oak intended to acquire shares of restricted common stock of Gem and Volptech with the

proceeds of the Offering. . . . During the telephone call, the Defendants failed to advise Sierra

that the Orlandos would receive a commission or otherwise profit from the Offering.. . .  The

Defendants intended that Sierra would pass on the representations and omissions made during

this telephone conversation to potential investors and the Defendants intended for those potential

investors to rely upon these representations and omissions. Am. Compl. ¶ 15-18.  These

allegations of knowledge and intent to have Sierra pass the misrepresentations and omissions

along to the Investors is sufficient to state a claim.   See Slayter, 2009 WL 223838, *3.

　　　　Defendants additionally contend that Sierra cannot demonstrate the necessary element of

reliance.  They argue that the merger clause in the contracts preclude reasonable reliance.

However, reliance is presumed in cases involving omissions:

> Under the circumstances of this case, involving primarily a failure to disclose,
> positive proof of reliance is not a prerequisite to recovery. All that is necessary is
> that the facts withheld be material in the sense that a  reasonable investor might
> have considered them important in the making of this decision.

 Affiliated Ute Citizens of Utah v. U. S., 406 U.S. 128, 153-54 (1972).

　　　　Defendants' reliance on Mergens v. Dreyfoos, 166 F.3d 1114 (11th Cir. 1999) is

misplaced.  <u>Mergens</u> is distinguishable from the instant case because, in <u>Mergens</u>, the parties had

been in an adversarial relationship and the plaintiff had made prior allegations of fraud.  Under

those circumstances, the court found that the plaintiffs had not proven the reliance element of

fraud because reliance on misrepresentations or omissions by the opposing parties negotiating a

settlement agreement in the context of a contentious and adversarial relationship is unreasonable

as a matter of law.  <u>Id.</u> at 1116.  In contrast, here, there is no allegation that Sierra or the Investors

had an adversarial relationship with the Defendants.

Defendants assert that they cannot be liable for fraud based on a material omission

because they had no duty to disclose the Orlandos' commission to the Investors.  "[A] defendant's

omission to state a material fact is proscribed only when the defendant has a duty to disclose."

<u>Ziemba</u>, 256 F.3d at 1206 (<u>citing</u> <u>Rudolph v. Arthur Andersen & Co.</u>, 800 F.2d 1040, 1043 (11th

Cir. 1986)).  A duty to disclose arises under two circumstances: (1) "[w]here a defendant's failure

to speak would render the defendant's own prior speech misleading or deceptive;" and (2) "where

the law imposes special obligations, as for accountants, brokers, or other experts, depending on

the circumstances of the case."  <u>Id.</u>  Factors to be considered in determining whether a duty to

disclose exists include: "the relationship between the plaintiff and defendant, the parties' relative

access to the information to be disclosed, the benefit derived by the defendant from the purchase

or sale, defendant's awareness of plaintiff s reliance on defendant in making its investment

decision, ... defendant's role in initiating the purchase or sale [,] ... the extent of the defendant's

knowledge and the significance of the misstatement, fraud or omission, [and] ... [t]he extent of

the defendant's participation in the fraud."  <u>Id.</u>; <u>Cordova v. Lehman Bros., Inc.</u>, 526 F.Supp.2d

1305 (S.D. Fla. 2007).  Consideration of these factors suggests that Defendants may have had a

duty to disclose in this situation, which is ultimately a question of fact.  It is alleged that Defendants had full access to the undisclosed information prior to the transaction, whereas Plaintiff had no access to the information. Am. Compl. ¶ 14, 16.  Defendants are alleged to have derived a substantial benefit, namely $232,000 to White Oak and Statham and $60,000 to the Orlandos, from this transaction.  Am. Compl. ¶ 52-53.  Sierra alleges that Defendants intended that Sierra would pass on the misrepresentations/omissions to the Investors and that Defendants intended for the Investors to rely on such. Am. Compl. ¶ 18.  Defendants are alleged to have initiated the securities transaction at issue.  Am. Compl. ¶ 12-15.   The Amended Complaint alleges that, *prior* to the telephone call at issue in which allegedly fraudulent misrepresentations and omissions were made regarding the nondisclosure of the Orlandos' commission, White Oak, Statham, and the Orlandos agreed that the Orlandos would be paid a substantial commission contingent upon the completion of the securities transaction.  Am. Compl. ¶ 14-15.  Accordingly, based on the allegations in the Amended Complaint, there are sufficient allegations pled that Defendants had a duty to disclose the Orlandos' commission, which was undoubtedly significant, accounting for more than 25% of the entire investment funds, and correspondingly reducing the amount of operating capital available for the company the investors intended to acquire through the Offering.  The Court cannot conclude on a motion to dismiss that there was no duty to disclose as a matter of law.

Lastly, Defendants argue that the fraud claims are barred by the economic loss rule. Under Florida law, "[t]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Indem. Ins. Co. v. Am. Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004).  In relevant part,

this doctrine applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." Id. The rule is "designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id.  However, the economic loss doctrine is not applicable to Sierra's fraud claims.  First, "the economic loss rule does not bar tort actions based on fraudulent inducement." D & M Jupiter, Inc. v. Friedopfer, 853 So.2d 485, 487 (Fla. 4th DCA 2003). See also Allen v. Stephan Co., 784 So.2d 456 (Fla. 4th DCA 2000) ("The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement."); May v. Nygard Holdings Ltd., 203 Fed.Appx. 949, *1-2 (11th Cir. 2006).  Similarly, the economic loss rule does not bar Sierra's statutory claims, such as the fraud claims brought for violations of Section 517.301, Florida Statutes, and 15 U.S.C. § 78j(b). Comptech Intern., Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219 (Fla. 1999).

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants White Oak and Statham's Motion to Dismiss (DE 35) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The motion to dismiss for lack of personal jurisdiction is **DENIED** as to White Oak and Statham.

    b.  The motion to dismiss for failure to state a claim is **GRANTED** as to Count IV, declaratory judgment against White Oak.  The motion is **DENIED** as to the remaining counts against White Oak and Statham.

2. Defendants Philip Orlando and Anthony Orlando's Motion to Dismiss the First Amended

Complaint (DE 36) is **DENIED.**

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 30th day of March, 2009.

                                                KENNETH A. MARRA
                                              United States District Judge

Copies furnished to:
Counsel of Record